J-S52021-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
SHAHEEM WILLIS :
:
Appellant : No. 1555 EDA 2018

Appeal from the Judgment of Sentence April 9, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0005238-2009.

BEFORE: OTT, J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED NOVEMBER 15, 2019**

Shaheem Willis appeals *pro se* from the order denying his first petition

for relief pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A. §§

9541-9546. We affirm.

The PCRA court summarized the pertinent facts as follows:

> At 3:30 p.m. on February 25, 2009, [Willis] stood on the
> 6100 block of Spruce Street in Philadelphia with two
> brothers, Christian and Deshaoun Williams, when they saw
> a car passing by which contained the stepmother and
> brother of Antwoine Saunders, who previously had shot
> Deshaoun. The victim in this case, Antwoine Saunders'
> brother, twelve-year-old J.S., arrived in a car driven by his
> mother, Tamika Anderson. As Anderson circled the block
> looking for a parking place, J.S. noticed that either [Willis]
> or one of the Williams brothers was pointing at the car.
> Once the car was parked on the corner of 60th and Spruce
> Streets, J.S. waited in the front-passenger seat while his
> mother entered the school to pick up his sister.

Soon after his mother exited, J.S. observed [Willis] and Christian Williams approaching in the rearview mirror. [Willis] drew an unlicensed, 9mm Luger handgun and fired through the car window at J.S. shooting him in the chest. [Willis] than ran up to the car, firing a second shot at J.S. from only two feet away that struck J.S. in the hand. [Willis] fled toward 60th Street. As Anderson exited the school, J.S. exited the car and said, "Mom, they shot me." She helped J.S. lie down on the sidewalk and looked up to see [Willis] secreting a gun into his pocket while he fled. Anderson chased [Willis] but lost him in the crowd.

A nearby paratransit bus driver, Jonathan McGill, heard the gunshots and observed [Willis] running from the scene of the crime. McGill called police and gave them a physical description of [Willis]. Crime scene investigators secured the area and recovered five 9mm fired cartridge casings at the scene of the shooting. Investigators determined that all five casings had been ejected from the same gun.

J.S. spent two and a half weeks in the hospital, sustaining what was described as grave, life threatening injuries that required extensive surgery to all of his vital organs, including removal of part of his lung. He had multiple scars from the surgeries and bullet wounds. After being discharged from the hospital, J.S. then spent several months recovering from his injuries before he could resume some of his normal activities.

On March 3, 2009, J.S. was shown a photo array. He identified [Willis] as the shooter and Christian and Deshaoun Williams as his companions.

Acting pursuant to a warrant, police arrested Deshaoun Williams at his home, recovering from Deshaoun a cell phone that contained a photo of him brandishing two firearms. One of those firearms was the same type used to shoot J.S. The cell phone also had [Willis] listed as one of Deshaoun's contacts, under [Willis'] nickname in the neighborhood, "Shy." In addition, police were directed by Williams' mother to a live bullet that matched the bullet casings found at the crime scene. This bullet was found in a room shared by the Williams brothers.

> On July 20, 2010, [Willis] was found guilty by a jury of attempted murder, aggravated assault [and related charges].

PCRA Court Opinion, 11/30/18, at 2-3 (footnote omitted).

On October 8, 2010, the trial court imposed an aggregate term of twenty to forty years of imprisonment and a consecutive twelve-year probationary term. Willis filed a timely post-sentence motion that was denied by operation of law. Thereafter, Willis filed a timely appeal to this Court in which he challenged the discretionary aspects of his sentence. Finding no merit to this claim, we affirmed his judgment of sentence on June 12, 2011. *Commonwealth v. Willis*, 53 A.3d 928 (Pa. Super. 2011) (unpublished memorandum). On March 12, 2013, our Supreme Court denied Willis' petition for allowance of appeal. *Commonwealth v. Willis*, 63 A.3d 777 (Pa. 2013). On October 7, 2013, the United States Supreme Court denied Willis' petition for writ of *certiorari*. *Willis v. Pennsylvania*, 571 U.S. 866 (2013).

The PCRA court summarized the subsequent procedural history as follows:

> On March 10, 2014, [Willis] filed the instant PCRA petition. [Willis] filed an amended petition on August 29, 2014. On September 15, 2014, [Willis] filed a motion to remove counsel and proceed *pro se*. On February 9, 2016, a hearing was held pursuant to *Commonwealth v. Grazier*, 552 Pa. 9 (Pa. 1998) and [Willis] was permitted to proceed *pro se* for PCRA review. On April 25, 2016, [Willis] filed a *pro se* Amended PCRA Petition and filed a Supplemental Amended PCRA Petition on May 6, 2016. On January 25, 2017, the Commonwealth filed a Motion to Dismiss. [Willis] filed several responses to the Commonwealth's Motion to Dismiss on February 9, 2017, April 21, 2017, June 23, 2017, and August 7, 2017. On

March 8, 2017, the Commonwealth filed an Amended Motion to Dismiss. On August 9, 2017, the Commonwealth filed a Response to [Willis'] Third Supplemental PCRA Petition. One of the issues raised was whether [Willis] was sentenced to an illegal mandatory sentence pursuant to **Alleyne v. United States**, 570 U.S. 99 (2013).

On April 9, 2018, a resentencing hearing was held. After hearing testimony and reviewing the record and all documents provided, this Court reimposed [Willis'] original sentence and clarified [Willis'] sentence was not influenced by any mandatory minimums.

On April 10, 2018, this Court sent [Willis] a 907 Notice of Intent to Dismiss for lack of merit on [Willis'] remaining PCRA claims. On May 1, 2018, [Willis] filed a response. On May 4, 2018, following an independent review of the record, and [Willis'] reply to the 907 Notice, this Court dismissed [Willis'] PCRA Petition without a hearing for lack of merit.

PCRA Court Opinion, 11/30/18, at 4-5. This timely appeal followed.[1] Although the PCRA court did not require Willis to comply with Pa.R.A.P. 1925(b), the court filed an opinion pursuant to Rule 1925(a).

Willis now raises the following issues:

A) Did not the [PCRA] court err and abuse its discretion in regards to several issues such as: 1) failing to consider sentencing factors set forth in 42 Pa.C.S. section 9721(b); 2) failing to adequately state on the record reasons for the sentence imposed, including reasons for the grossly disparate sentences between codefendants; and 3) focusing solely upon the seriousness of the

_____

[1] On February 7, 2019, Willis filed an "Application For Leave to File Post-Submission Communication And Motion To Stay Proceedings For Remand To The Trial Court For Full Evidentiary Hearing And Frye Hearings Pursuant To PA.R.A.P. 2501." In an order filed March 11, 2019, we deferred Willis' request to this panel for disposition. We deny Willis' application for remand as moot.

offense, resulting in a manifestly excessive and clearly unreasonable sentence?

B) Did not the [PCRA] court err and abuse its discretion by dismissing [Willis'] PCRA petition without an evidentiary hearing to determine [trial] counsel's reasonableness for failing to impeach [J.S.] with prior sworn testimony and inadequately cross examining this witness?

C) Did not [the] prosecution commit a fraud upon the court and the [PCRA] court err and abuse its discretion by failing to grant a new trial, dismissing [Willis'] PCRA petition, not deeming [trial] counsel constitutionally ineffective for failing to investigate and challenge the false evidence on any grounds, constituting a complete miscarriage of justice?

D) Did not the [PCRA] court err and abuse its discretion by dismissing [Willis'] PCRA petition when [trial] counsel was per se ineffective for failing to prepare for trial, while his failure to investigate and call two eyewitnesses, and his performance during trial supports counsel's own admission to his unpreparedness?

E) Did not the [PCRA] court err by confusing and misstating [Willis'] codefendant with someone else; and abuse its discretion by dismissing [Willis'] PCRA petition without an evidentiary hearing to determine [trial] counsel's reason for failing to seek a jury instruction to limit the scope of evidence that was only admissible against the codefendant?

F) Did not the [PCRA] court err and abuse its discretion in its disposition that [trial] counsel's errors did not constitutionally deprive [Willis] of his right to [the] effective assistance of counsel?

Willis' Brief at 4 (excess capitalization omitted). We will address Willis' issues in the order presented.

Our scope and standard of review is well settled:

In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the

PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 779 (Pa. Super. 2015)

(citations omitted).

When the PCRA court has dismissed a petitioner's PCRA petition without an evidentiary hearing, we review the PCRA court's decision for an abuse of discretion. ***Commonwealth v. Roney***, 79 A.2d 595, 604 (Pa. 2013). The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. ***Id.*** To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

 ***Commonwealth v. Blakeney***, 108 A.3d 739, 750 (Pa. 2014).

In his first issue, Willis challenges the discretionary aspects of his new sentence. Willis preserved his sentencing claims by filing a timely post-sentence motion, upon which the court did not rule. ***See generally Commonwealth v. Rodriguez***, 174 A.2d 1130 (Pa. Super. 2017); Pa.R.Crim.P. 720(A)(2)(b) (providing that, [if] the defendant files a timely post-sentence motion, the notice of appeal shall be filed . . within 30 days of the entry of the order denying the motion by operation of law in cases in which the judge fails to decide the motion"). However, Willis did not appeal from his judgment of sentence; instead, he raises a discretionary aspect challenge as

part of his PCRA appeal. Given these circumstances, Willis' sentencing claim is not properly before us. *See Commonwealth v. Fowler*, 930 A.2d 586, 593 (Pa. Super. 2007) (explaining that challenges to the discretionary aspects of sentencing are not cognizable under the PCRA).[2]

In his remaining claims, Willis alleges the ineffective assistance of trial counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's act or omission prejudiced the petitioner. *Id.* at 533.

As to the first prong, "[a] claim has arguable merit where the factual averments, if accurate, could establish cause for relief." *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (*en banc*). "Whether the facts

---

[2] Even had Willis filed a direct appeal of his new sentence we would have found his discretionary challenge to be meritless, given that the trial court provided ample reasons for its sentencing choice. *See* PCRA Court Opinion, 11/30/18, at 20-22.

rise to the level of arguable merit is a legal determination.'" *Id.* (citing *Commonwealth v. Saranchak*, 866 A.2d 292, 304 n.14 (Pa. 2005).

As to the second prong of this test, trial counsel's strategic decisions cannot be the subject of a finding of ineffectiveness if the decision to follow a particular course of action was reasonably based and was not the result of sloth or ignorance of available alternatives. *Commonwealth v. Collins*, 545 A.2d 882, 886 (Pa. 1988). Counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Ervin*, 766 A.2d 859, 862-63 (Pa. Super. 2000) (citation omitted).

As to the third prong of the test for ineffectiveness, "[p]rejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Stewart*, 84 A.3d at 707. "A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Commonwealth v. Rathfon*, 899 A.2d 365, 370 (Pa. Super. 2006).

Finally, when considering an ineffective assistance of counsel claim, the PCRA court "is not required to analyze these [prongs] in any particular order of priority; instead if a claim fails under any necessary [prong] of the ineffectiveness test, the court may proceed to that [prong] first." *Commonwealth v. Tharp*, 101 A.3d 736, 747 (Pa. 2014) (citations omitted). In particular, when it is clear that the petitioner has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone,

without a determination of whether the first two prongs have been met. ***Commonwealth v. Travaglia***, 661 A.2d 352, 357 (Pa. 1995).

In his second issue, Willis contends that the PCRA court erred in dismissing, without first holding an evidentiary hearing, his claim that trial counsel was ineffective for failing to impeach the shooting victim, J.S., regarding J.S.'s allegedly prior inconsistent testimony at the preliminary hearing and in otherwise cross-examining him. According to Willis, trial counsel "failed to review the preliminary hearing transcripts," and was thus "unprepared for the victim's inconsistencies concerning the most crucial factors of the case." Willis' Brief at 7.

In its Rule 1925(a) opinion, the PCRA court explained that J.S.'s preliminary hearing testimony was not inconsistent with his trial testimony and that trial counsel effectively cross-examined J.S. regarding his identification of Willis as the shooter. The court explained:

> [Willis'] primary defense at trial was misidentification. [He] claimed Trial Counsel failed to impeach J.S. properly regarding whether he was able to identify the person who shot him after broken glass fell in his face and he used his hand to cover his face. On this basis, [Willis] argued that as a result of Trial Counsel's failure to question J.S. regarding identification, "the jury remained unaware of circumstances of which a fact-finder could reasonably infer the possibility of a misidentification."
>
> "A failure to impeach a key witness is considered ineffectiveness in the absence of a reasonable strategic basis for not impeaching." ***Commonwealth v. Treiber***, 121 A.3d 435, 485 (Pa. 2015). [Willis] argued that J.S.'s testimony at the preliminary hearing supported [Willis'] misidentification defense, but that Trial Counsel failed to question J.S. at trial on his ability to identify [him].

> However, J.S.'s testimony at trial and the preliminary hearing were consistent. At the preliminary hearing . . . J.S. never testified that he could not see because of any glass in his face. J.S. merely testified that the first gunshot broke the passenger window of the car and cut his face. Moreover, to the contrary, J.S. was cross-examined at length at trial about his ability to identify [Willis] during the shooting. J.S. consistently and steadfastly identified [Willis] as the shooter on cross-examination by [Trial] Counsel[.]
>
> The weight and credibility of the identification was for the jury to decide. After hearing all the facts of the case, the jury clearly determined that J.S.'s identification was credible, therefore this claim fails.

PCRA Court Opinion, 11/30/18, at 8-10 (citations omitted).

Our review of the record supports the PCRA court's conclusions. To support his claim, Willis cites to a portion of the preliminary hearing transcript wherein J.S. testified that he used his hand to cover his head. *See* Willis' Brief at 17. However, even if J.S's account of how the shooting took place at the preliminary hearing and trial were not identical—whether he used his hand to cover his head or only his chest—Willis has not demonstrated prejudice from counsel's lack of cross-examination on this issue, given J.S.'s clear and unequivocal trial testimony that he was able to identify Willis as the person who shot him. *See* ***Commonwealth v. Rios***, 920 A.2d 790, 805 (Pa. 2007) (explaining that prior counsel will not be found ineffective for failing to impeach a witness with regard to minor inconsistencies). Thus, Willis' second issue fails.

In his third issue, Willis asserts that the Commonwealth committed a fraud upon the court and, for that reason, he should be granted a new trial.

In addition, Willis asserts that trial counsel was ineffective for failing to "investigate and/or challenge the false evidence on any grounds," because it listed a different last name for the patient on some of the documents. Willis' Brief at 22 (excess capitalization omitted).

Initially, Willis did not raise the fraud claim in his amended petition or any supplement thereto. Instead, he first raised this claim in one of his several responses to the PCRA court's Rule 907 notice. Thus, we will not consider it further. *See Commonwealth v. Burton*, 936 A.2d 521, 527 (Pa. Super. 2007) (explaining that claims not raised in the PCRA petition are waived).

The PCRA court rejected Willis's claim that trial counsel was ineffective for failing to object to the use of the J.S.'s medical records at trial. The Court explained:

> [Trial] counsel stipulated to the authenticity and content of the medical records during trial. In this case, some of the medical records would have been admissible because statements made for medical diagnosis or treatment are an exception to hearsay. Pa.R.E. 803(4). Under the Pennsylvania Rules of Evidence, hospital records have been admitted without witness testimony to show the fact of hospitalization, treatment [prescribed], and symptoms found. *Commonwealth v. Xiong*, 630 A.2d 446, 451-52 (Pa. Super. 1993). The stipulation merely avoided forcing the Commonwealth to call medical personnel to authenticate the medical records. The actual testimony would have included greater detail regarding the extent of the victim's injuries, which the defense had reason not to highlight. [Trial] counsel's decision to stipulate to the [medical] records was strategic.

PCRA Court Opinion, 11/30/18, at 16 (some citations omitted).

In addition, the PCRA court concluded J.S.'s testimony at trial provided ample evidence that, as a result of the shooting, he was seriously injured:

> As proof of serious bodily injury, J.S. testified that he was in the hospital for three weeks as a result of being shot in the chest and hand. He testified that it took approximately three months before he could resume normal activities and that he has scars on his hand and chest as a result of the shooting. J.S. showed the jury the scars on his hand, chest, and abdomen as a result of the shooting and resulting surgeries. J.S. testified that he gets tired faster as a result of his injuries from the shooting. Furthermore shooting someone is enough to demonstrate serious bodily injury. Therefore, an abundance of evidence was presented to demonstrate that, given the totality of the circumstances, the victim was shot and sustained serious bodily injury as a result.

*Id.* at 17 (citations omitted).

Our review of the record supports the PCRA court's conclusion that Willis has not established his ineffectiveness claim. Initially, Willis has failed to proffer any documentation to support his claim that some of the medical records used at trial did not belong to J.S. Without such a proffer, he cannot establish ineffectiveness and the need for an evidentiary hearing. **See Commonwealth v. Clark**, 961 A.2d 80, 94 (Pa. 2008) (explaining that, in the absence of a sufficient proffer, a petitioner's bare assertions would inappropriately convert an evidentiary hearing into a "fishing expedition" for possible exculpatory evidence).

Moreover, even if such records exist, Willis cannot establish how he was prejudiced. As summarized by the PCRA court above, J.S. provided ample

evidence that the shooting incident caused him to be seriously injured.  Thus, Willis's third issue fails.

In his fourth issue, Willis asserts that trial counsel was ineffective for failing to investigate and then call two eyewitnesses at trial. According to Willis, trial counsel's pre-trial investigation of the case was "non-existent," and he contends that trial counsel acknowledged on the record that he was unprepared for trial.  Willis further refers to his prior issues regarding the preliminary hearing transcript and the medical records to further support this claim of ineffectiveness.

Initially, we note that, although trial counsel stated that he was unprepared for trial, this statement must be read in the context of when it was made—the trial court denied trial counsel's request to present expert testimony regarding the reliability of eyewitness identifications.  **See** N.T., 7/12/10, at 15.  This statement cannot be read to infer, as Willis suggests, that trial counsel had completed no other pre-trial investigation.  Indeed, our review of the trial transcript reveals trial counsel was prepared for trial and continued to present a misidentification defense.

The two eyewitnesses that Willis contends trial counsel should have called were Corey Bell, the paratransit driver who was with his co-worker, Mr. McGill, and Davida Dixon, a passenger in the paratransit bus.  In order to establish that trial counsel was ineffective for failing to investigate and/or call a witness at trial, a PCRA petitioner must demonstrate that:

(1) the witness existed; (2) the witness was available; (3) trial counsel was informed of the existence of the witness or should have known of the witness's existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant.

***Commonwealth v. Hall***, 867 A.2d 619, 629 (Pa. Super. 2005).

The PCRA court concluded that Willis did not proffer sufficient evidence to support his claim of ineffectiveness:

> As required under the PCRA, [Willis] failed to provide any affidavits or signed certifications from any proposed witnesses demonstrating that they were available and willing to testify on his behalf at trial. [Willis] attached statements to his PCRA petition and stated without any further support that these witnesses were available and would have testified. [Willis'] unsupported assertion is insufficient to warrant an evidentiary hearing.

PCRA Court Opinion, 11/30/18, at 13 (citations omitted). Once again, our review of the record supports the trial court's conclusion that Willis did not proffer sufficient information to warrant an evidentiary hearing. ***Clark***, ***supra***.

In addition, the PCRA court concluded that Willis could not establish prejudice. The court explained:

> Furthermore, [Willis] cannot demonstrate that there was a reasonable probability that the outcome of the trial would have been different if trial counsel had presented [the] testimony of Bell and Davida. Neither witness could identify the shooter's face, however, both described the shooter's age, weight and clothing as being similar to the description given by J.S. Significantly, the testimony from Bell and Davida actually could have bolstered J.S.'s identification of [Willis] as the shooter by providing a description similar to J.S.'s description. At the very least, these witnesses could

- 14 -

not have demonstrated that J.S. did not see the shooter, as [Willis] asserted, because each of these witnesses had very different vantage points. J.S. stated that he was sitting in the passenger seat of his mother's car and watched while [Willis] approached his vehicle from the rearview mirror, thus getting a full frontal view of [Willis]. This observation was made after J.S. had also seen [Willis] standing on the corner as someone pointed at the vehicle as it circled the block. Given J.S.'s unequivocal identification of [Willis] as the shooter, it was unlikely that the inability of other possible witnesses in different vantage points to see the shooter's face would have caused a different outcome at trial.

PCRA Court Opinion, 11/30/18, at 13-14.

Our review of the record supports the PCRA court's conclusion that Willis did not establish prejudice. Moreover, our review of the trial testimony refutes Willis' assertion that "these witnesses' accounts of events clearly aided counsel's defense strategy of misidentification." Willis' Brief at 27. Even if these witnesses testified at trial consistent with their statements to police, their testimony would not discredit J.S.'s identification of Willis as the shooter, given the differing circumstances described above by the PCRA court.

In his fifth issue, Willis claims that he was entitled to an evidentiary hearing to determine whether trial counsel was ineffective for failing to seek a jury instruction "to limit the scope of evidence that was only admissible against the codefendant." Willis' Brief at 28 (excess capitalization).[3] In

_____

[3] Christian Williams was Willis' co-defendant and the jury convicted him on similar charges. However, the Commonwealth did not charge Christian with attempted murder. Although the record is not clear, it appears that all charges originally filed against Deshaoun Williams involving this incident were later dismissed.

support of this issue, Willis first asserts that, because the PCRA court misidentified which Williams brother was his co-defendant, the PCRA court's "disposition to this claim was based upon misinformation which was crucial in determining whether [trial] counsel was ineffective[.]" *Id.* Willis then contends that trial counsel's failure to seek such an instruction "caused damaging spill-over prejudice" to him. *Id.* We disagree.

At trial, the Commonwealth introduced into evidence a live 9mm bullet that was found in the bedroom of Christian and Deshaoun Williams. The Commonwealth also introduced a picture of Deshaoun Williams holding a firearm that matched the description of the weapon used in this case.

Although misidentifying Willis' co-defendant in its Rule 1925(a) opinion, the PCRA court properly found this claim to be meritless. The court explained:

> [Willis] argued that since he was not in the picture, the jury could not consider it as evidence against him. To the contrary, [Willis] was charged with criminal conspiracy along with Deshaoun Williams [sic]. Therefore, the live round was relevant and probative of [Willis'] involvement in the conspiracy to commit attempted murder and aggravated assault.
>
> While [Willis] labeled his ineffective assistance of counsel argument as a failure to request a limiting instruction, [Willis] framed the argument as a failure to file a motion to sever his case from his co-defendant. [Willis] claimed that the evidence introduced against co-defendant Williams was confusing and he suffered prejudice as a result. However, as stated above, given the fact that [Willis] was charged with conspiring with co-defendant Williams, there was great weight against severing the co-defendants.
>
> As a result, evidence that co-defendant Deshaoun Williams [sic] possessed a firearm of the same make and model as the one [Willis] used to shoot [J.S.] could be used

as evidence of [Willis'] participation in the conspiracy as well. ***Commonwealth v. Brewington***, 740 A.2d 247, 252 (Pa. Super. 1999). Therefore, a limiting instruction was not warranted and trial counsel could not be ineffective for failing to raise a meritless objection. ***Commonwealth v. Hannibal***, 99 A.3d 197, 207 (Pa. 2016).

PCRA Court Opinion, 11/30/18, at 14-15.

In addition, the PCRA court concluded that Willis could not establish prejudice:

> Moreover, even if Trial Counsel was ineffective for failing to request a limiting instruction, [Willis] was not prejudiced by his failure. Given the substantive evidence introduced against him at trial, including the identification by [J.S.], it was unlikely that the jury would have arrived at a different verdict even if this Court specifically instructed the jury that the photograph of co-defendant Williams [sic] holding a gun and the 9mm bullet found in co-defendant Williams's bedroom could only be used against Williams. ***Commonwealth v. Spotz***, 84 A.3d 294, 314, 317 (Pa. 2014) (finding that the court must analyze the nature of the alleged violation "against the strength of the prosecution's case at trial" to determine suffered prejudice and that "where there was overwhelming evidence of guilt, outcome of the trial would not have been different had trial counsel" pursued a different action or strategy).

PCRA Court Opinion, 11/30/18, at 14-15.

Our review of the record supports the PCRA court's conclusion. Although Willis no longer argues severance, the fact that he and Christian Williams were charged with conspiracy renders his claim meritless. In addition, as the PCRA court stated, given the overwhelming evidence of guilt, Willis cannot establish prejudice. ***Spotz***, ***supra***. Thus, Willis' fifth issue fails.

- 17 -

In his sixth and final issue, Willis asserts that trial counsel "was undoubtedly ineffective" because each of his preceding issues had merit. Willis' Brief at 30. As noted above, we agree with the trial court's contrary conclusion that none of the issues had merit. As the court explained:

> In the case at bar, none of [Willis'] individual claims have merit. Moreover, [Willis] also failed to demonstrate prejudice as a result of any of the individual claims. As a result, there is no collection of errors to analyze to find that either Trial Counsel or Appellate Counsel rendered deficient performance. Accordingly, this claim fails.

PCRA Court Opinion, 11/30/18, at 19-20. As noted *supra*, our review of the record supports the PCRA court's assessment of Willis' final ineffective assistance claim. *See Commonwealth v. Tedford*, 960 A.2d 1, 56 (Pa. 2008) (explaining "no number of failed claims may collectively warrant relief if they fail to do so individually").

In sum, Willis' sentencing claim is not properly before us and otherwise without merit. Additionally, because he has not established his ineffective assistance of counsel claims, the PCRA could did not err in denying Willis' petition without a hearing. *Blakeney*, *supra*. We therefore, affirm the order denying Willis post-conviction relief.

Application for Remand denied. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/15/19